UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re CIM-SQ Transfer Cases

_____

Re Case Nos.: 20-cv-09415-BLF, 21-cv-00708-EJD, 21-cv-01832-JD, 21-cv-01963-HSG, 21-cv-04095-JD, 21-cv-04604-JD, 21-cv-06960-WHO, 21-cv-08154-JD.

Case No. 22-mc-80066-WHO

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS REPRESENTED PLAINTIFFS' COMPLAINTS**

## INTRODUCTION

Plaintiffs in the cases identified above ("the Represented Cases") allege that various California Department of Corrections and Rehabilitation (CDCR) defendants[1] violated their constitutional and, in some cases, state-law rights by transferring prisoners from the California Institution for Men (CIM), which was experiencing a COVID-19 outbreak, to

---

[1] The entity defendants named in the Represented Cases are the State of California, CDCR, California Correctional Health Care Services (CCHCS), SQSP, and CIM. Individuals named as defendants in the Represented Cases are: Ralph Diaz (the retired Secretary of CDCR), the Estate of R. Steven Tharatt (the former and now deceased Medical Director for CCHCS), Ronald Davis (the Warden of SQSP from approximately 2014 until February 4, 2020, and then the Associate Director of the Division of Adult Institutions at CDCR), Ronald Broomfield (Acting Warden of SQSP since February 4, 2020), Clarence Cryer (the Chief Executive Officer for Health Care at SQSP), Alison Pachynski (the Chief Medical Executive at SQSP), Shannon Garrigan (Chief Physician and Surgeon at SQSP), Mona Houston (Warden of CIM from approximately August 2019 until January 4, 2021), Louis Escobell (Chief Executive Officer for Health Care at CIM), Muhammad Farooq (Chief Medical Executive at CIM) and Kirk Torres (Chief Physician and Surgeon at CIM). Not every one of these defendants is named in each Represented Case, but all defendants are represented by counsel from the California Attorney General's office.

San Quentin State Prison (SQSP) in May 2020. Defendants filed motions to dismiss raising similar defenses. In light of the numerous cases based on the same or similar facts, and the motions to dismiss based on the same or similar defenses, the Chief Judge of the Northern District of California assigned the cases identified above to me for the following limited purpose:

1. Deciding whether the federal receiver for CCHS, Clark Kelso (the "Receiver"), has quasi-judicial immunity, and if not, some other defenses he has raised such as whether he is a state actor who can be sued under section 1983;
2. Determining whether the defendants have immunity under the Public Readiness And Emergency Preparedness (PREP) Act;
3. Determining whether the defendants are entitled to qualified immunity as a matter of law at the motion to dismiss stage;
4. Determining whether the complaints filed by unrepresented plaintiffs allege adequate detail to state a claim upon which relief can be granted.

*See* Dkt. Nos. 1 (Order of Limited Assignment), 7, 51 ("Assigned Issues").[2] In order to resolve the Assigned Issues identified in the Order of Limited Assignment, I set a briefing schedule and held a hearing on motions to dismiss filed in the cases identified above where plaintiffs were represented by counsel (Represented Cases).[3]

---

[2] There are several represented cases raising similar claims that have not been assigned to me for resolution of common issues. In *Hampton v. California*, 21-3058-LB, another court in this District found, in relevant part, that disputed facts precluded qualified immunity for defendants and that defendants were not entitled to immunity under the PREP Act (*see* Dkt. No. 72). This order is pending appeal with USCA number 22-15481. In *Polanco v. California*, 21-06516-CRB, and *Harris v. Allison*, 20-9393-CRB, a different court in this District similarly denied defendants' motions to dismiss based on qualified immunity and PREP Act immunity (*see* Dkt. Nos. 38 and 30, respectively). These orders are pending appeal with USCA number 22-15496 and number 22-15921, respectively.

[3] Other represented cases have been assigned to me for resolution of the Assigned Issues: 20-6326-EJD, 21-103-HSG, 21-1094-EJD, 21-5351-HSG, 21-5805-BLF, 21-9386-BLF, 21-9581-BLF, 22-150-WHO, 22-186-EJD, 22-465-EJD. These cases were not covered by my prior order setting a briefing schedule and hearing for motions to dismiss on the Assigned Issues. They also name some additional defendants, including the Receiver. A separate order will set the Assigned Issues for resolution in these additional represented

I held a hearing on the motions to dismiss on April 29, 2022, where counsel for all defendants and counsel for each represented plaintiff appeared.[4]  For the reasons explained below, I conclude that defendants are not entitled to immunity under the PREP Act or qualified immunity, resolving the second and third questions.  Accordingly, I deny the motions to dismiss those issues in the Represented Cases.[5]

## FACTUAL BACKGROUND[6]

As generally alleged in the Represented Cases, on March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency in California because of the impacts of the COVID-19 pandemic.  Plaintiffs contend that all defendants were aware by this time that the virus was highly transmissible and that precautions necessary to mitigate its spread included quarantining people exposed to the virus, rigorous cleaning and sanitation practices, social distancing, use of masks and other personal protective equipment, and regular testing.  They assert that defendants were aware that many of these precautions could not be effectively practiced at SQSP because of its infrastructure, including mostly open-air cells and poor ventilation.

A shelter-in-place order was enacted on March 16 in Marin County, where SQSP is located, followed by a statewide order on March 19.  On March 18, the Interim Executive Director of the Habeas Corpus Resource Center, the State Public Defender, Mary

---

cases.

[4] All plaintiffs' counsel in the Represented Cases identified above appeared, coordinating and delegating argument time to specific counsel.

[5] In the motions to dismiss filed in the Represented Cases, defendants raise a number of arguments in support of dismissal, including: (1) failure to state facts regarding each defendant sufficient to state the Section 1983 claim; (2) defendants are protected by qualified immunity; (3) defendants are immune under the PREP Act; (4) failure to allege fact sufficient to state a claim under the Americans with Disabilities Act or Rehabilitation Acts; (5) failure to exhaust claims against State defendants; and (6) the defendants are protected by various California state statutory immunity provisions.  The Order of Limited Assignment, and this Order, address only Assigned Issues (2) and (3).  Defendants' arguments with respect to the other issues are preserved and may be raised before the judges assigned to the underlying case.

[6] The facts relevant to the Assigned Issues alleged in the Represented Cases are substantially similar.

3

McComb, and others responsible for representing people on death row sent a letter to defendants Broomfield and Pachynski. The letter implored SQSP to provide inmates with PPE and cleaning supplies and to allow for social distancing, and to enact other policies to protect the health of inmates and staff.

On March 24, Governor Newsom issued Executive Order N-36-20, suspending intake of inmates into all state facilities for 30 days, which he subsequently extended. Yet in May 2020, defendants decided to transfer 122 prisoners from CIM, where there was a COVID-19 outbreak, to SQSP, which had no COVID-19 cases at the time.

Plaintiffs allege that California Correctional Health Care Services (CCHCS) and CDCR executives did not inform CIM staff of the transfer until the day before the transfers began. Most of the transferred prisoners were not tested within the two weeks before the transfer—a decision by a top healthcare executive at CIM of which other defendants were aware. Prisoners were not screened for symptoms before boarding the transfer buses. On May 30, 2020, defendants filled the buses with prisoners without providing space for distancing. Immediately after the transfer, 15 transferred prisoners tested positive for COVID-19. Defendants housed the transferred prisoners in the open-air Badger housing unit at SQSP; the transferred prisoners used the same showers and dining area as other prisoners.

Although the Marin County Public Health Officer spoke with some defendants on June 1, 2020, and recommended that transferred prisoners be immediately sequestered from the rest of the population, masking be enforced, and movement of staff be limited, defendants failed to follow his recommendations. Defendants only heeded his recommendation to appoint an incident commander with expertise in outbreak management on July 3, after the Marin County Board of Supervisors became involved.

Within three weeks of transfer, SQSP had a COVID-19 outbreak: It had more than 499 confirmed cases.

On June 13, 2020, a group of health experts toured San Quentin at the request of the Receiver. Plaintiffs allege that the experts circulated an "Urgent Memo" on June 15, 2020,

4

of which defendants were aware, warning of the scale that the COVID-19 outbreak at San Quentin could reach and warning that testing delays of 5-6 days were unacceptable. The experts also advised against using punishment-like quarantine conditions, which could result in under-reporting of symptoms, and recommended a release or transfer of prisoners. Defendants disregarded these recommendations.

California legislators, the Office of the Inspector General (OIG), and the Division of Occupational Safety and Health (Cal-OSHA) criticized CDCR's conduct in causing or failing to mitigate the outbreak. One California Assembly member criticized the transfer as the "worst prison health screw up in state history." On July 6, 2020, Governor Newsom said the prisoners "should not have been transferred." The OIG found that CDCR and CCHCS caused a public health disaster. Cal-OSHA cited CDCR and SQSP with 14 violations related to the outbreak.

Plaintiffs allege that, as a result of the outbreak, they became ill and some died from COVID-19. Plaintiffs bring various federal and state claims.[7]

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds on which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion

---

[7] The federal and state claims alleged in the Representative Cases are: violation of Eight Amendment rights under 42 U.S.C. § 1983; violation of substantive due process familiar relations rights in violation of First and Fourteenth Amendment rights under section 1983; violation of Americans with Disabilities Act (Title II), 42 U.S.C. § 12101, *et seq.*; violation of the Rehabilitation Act, 29 U.S.C. § 794; violation of Bane Act, California Civil Code § 52.1; Negligence (Survival Action); Negligent Supervision, Training, Hiring, and Retention (Survival Action); Failure to Furnish / Summon Medical Care (Survival Action); Wrongful Death – California Code Civ. Proc. § 377.60. Not all claims are alleged in every Represented Case. In addition, the sole claim asserted in *Thorp v. Diaz*, Case No. 21-cv-6960 is an Eighth Amendment violation alleged on behalf of a class defined as: "All current and former inmates at San Quentin State Prison who (1) have been diagnosed with COVID-19 and (2) for whom the transfer of inmates from Chino Institute for Men to San Quentin State Prison between May 28, 2020 and May 30, 2020, was a substantial factor in their diagnosis." Dkt. No. 1.

to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. JUDICIAL NOTICE

There are two exceptions to the rule that a court must consider only the complaint, on its face, when deciding a motion to dismiss: a court may also consider material that is incorporated into the complaint and material that is judicially noticeable. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Documents may be incorporated by reference into the complaint where a plaintiff relies on them extensively and they "form the basis" of some of his claims. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Courts may judicially notice an adjudicative fact that is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). But "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth," and "a

6

court cannot take judicial notice of disputed facts contained in [matters of] public record[]." *Khoja*, 899 F.3d at 999. Thus, a court must consider what facts are being proposed—i.e., "the purpose for which [the document is] offered." *Id.* at 1000.

Defendants ask the Court to take judicial notice and/or incorporate by reference a number of documents with respect to their claims of immunity, including:

- Various filings from *Plata v. Newsom*, Case No. 01-CV-01351-JST (N.D. Cal.), a longstanding case overseeing CDCR's provision of healthcare;
- Testimony of the Receiver before the California State Senate's Public Safety Committee Hearing;
- Executive Orders by the California Governor related to COVID-19;
- United States Centers for Disease Control and Prevention (CDC) guidance related to COVID-19;
- Advisory opinions by the Department of Health and Human Services (HHS) relating to the Public Readiness and Emergency Preparedness (PREP) Act; and
- California Correctional Health Care Services (CCHCS) Executive Organizational Chart.

Plaintiffs ask the Court to take judicial notice and/or incorporate by reference many of the same documents as Defendants, as well as the following documents:

- Marin County Health Officer orders;
- The California Governor's proclamation of a state of emergency;
- An order from the state court case *In re Von Staich*;[8]
- CCHCS and California Department of Corrections and Rehabilitation (CDCR) memoranda;
- The February 2021 California Office of the Inspector General (OIG) report regarding the transfer of prisoners from CIM to SQSP.[9]

I take judicial notice of the fact that HHS issued several advisory opinions relating

---
[8] *See* Dkt. No. 27-1 at 54.
[9] *See, e.g.,* Dkt. No. 32 at 5.

7

to the PREP Act: Advisory Opinion 20-03 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act October 22, 2020, as Modified on October 23, 2020;[10] and Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, January 8, 2021.[11]  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

I will not take judicial notice of the *Plata* filings nor the Receiver's testimony; defendants appear to want me to take as true factual representations made in the *Plata* case and the Receiver's testimony and to draw related inferences, but I cannot do so because they go to the heart of the plaintiffs' allegations.  *Khoja*, 899 F.3d at 999.  Nor will I take notice of the *In re Von Staich* order; plaintiffs similarly appear to request that I rely on factual findings made in that opinion.  But plaintiffs need not prove their allegations at the pleadings stage.

I take judicial notice of parts of the OIG report, as incorporated by reference by the operative complaints in most of the Represented Cases, for the purpose of acknowledging the OIG's investigation and report.  It supports the plausibility of some of plaintiffs' allegations.  I do not take notice of it for the truth of the report's findings of facts and conclusions.

The remaining documents are not necessary or relevant to my determination of the PREP Act and qualified immunity issues.  The requests for judicial notice of those documents are denied for purposes of this order.

## II.     PREP ACT IMMUNITY

The PREP Act provides immunity for injuries "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the HHS Secretary] has been issued with respect to

---

[10] Published at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO3.1.2_Updated_FINAL_SIGNED_10.23.20_0.pdf.

[11] Published at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.

such countermeasure." 42 U.S.C. § 247d-6d(a)(1). Under the statute, covered countermeasures include "qualified pandemic . . . product[s]" and "respiratory protective device[s] . . . that the Secretary determines to be a priority for use." 42 U.S.C. § 247d-6d(i)(1)(A), (C), (D).

The Secretary issued a declaration in light of COVID-19. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,198 (Mar. 17, 2020) ("Declaration"). It has been amended several times during the pandemic. A "covered countermeasure" may include "any antiviral, any other drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine, used . . . to treat, diagnose, cure, prevent, mitigate or limit the harm from COVID-19." Fourth Amendment to the Declaration, 85 Fed. Reg. 79,190, 79,196 (Dec. 9, 2020).

The Secretary has also declared that failure to institute a covered countermeasure may sometimes give rise to immunity:

> Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d. For example, consider a situation where there is only one dose of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population.

*Id.* at 79, 197. The January 8, 2021 HHS Advisory Opinion differentiates between "allocation which results in non-use by some individuals," which allows for immunity, and "nonfeasance . . . that also results in non-use," which does not. Advisory Opinion 21-01 at 4. Thus, courts have concluded that immunity for "inaction claims" only lies when the defendant's failure to administer a covered countermeasure to one individual has

9

"a close causal relationship" to the administration of that covered countermeasure to another individual. *Lyons v. Cucumber Holdings*, LLC, 520 F. Supp. 3d 1277, 1285–86 (C.D. Cal. 2021) (citation omitted).

Plaintiffs generally allege that defendants put them at increased risk of contracting COVID by transferring prisoners from CIM to SQSP, failing to implement appropriate testing and distancing before and during the transfer, and failing to implement appropriate quarantine measures after the transfer. Those allegations are plausible. Defendants' arguments that the PREP Act confers immunity to all of those claims fail.

To start, the transfer of prisoners is not a covered countermeasure under the PREP Act. While the failure to test could be considered a failure to administer a covered countermeasure, the facts as alleged bear no indication that the failure to test the transferring prisoners had any relationship to the testing of other prisoners. And the allegations are of non-use resulting from non-feasance rather than allocations. Defendants do not even suggest that the reliance on old COVID tests was the result of a limited number of tests and a choice to use the tests on a different population. To the extent any plaintiffs claim that mask distribution contributed to their contracting COVID, defendants could ultimately demonstrate entitlement to PREP Act immunity for decisions on how to allocate limited masks. But the mere mention of countermeasures in the complaints does not confer immunity. *See Rachelle Crupi, v. The Heights of Summerlin, LLC, et al.*, No. 221CV00954GMNDJA, 2022 WL 489857, at *6 (D. Nev. Feb. 17, 2022) ("the fact that the Complaint mentions some covered countermeasures as examples of defendants' failure to enact a COVID-19 response policy, does not rise to the level of alleging that [decedent]'s death was specifically caused by defendants' use (or misuse) of covered countermeasures"). I cannot conclude that any of the defendants have immunity under the PREP Act.

To the extent that any defendant asserts that the challenged conduct in this case involves the "management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures," this

also fails. Declaration, 85 Fed. Reg. at 15202.[12] Prisons are not countermeasure programs, nor are they locations for the purpose of distributing countermeasures. While the Act may confer immunity for the administration of countermeasures within a prison context, it does not serve to convert all prison operations into countermeasure programs or locations such that any COVID-related conduct or decisions made within that context are immune.

My finding that none of the defendants is entitled to immunity under the PREP Act is consistent with decisions by other district courts within the Ninth Circuit. *See Smith v. Colonial Care Ctr., Inc.*, No. 2:21-CV-00494-RGK-PD, 2021 WL 1087284, at *4 (C.D. Cal. Mar. 19, 2021), appeal filed, No. 21-55377 (9th Cir. Apr. 19, 2021) ("failure to 'implement an effective policy for isolating proven or suspected carriers of the coronavirus, and protecting [nursing home] residents from exposure to COVID-19[]'" not covered by the PREP Act); *Hampton v. California*, No. 21-CV-03058-LB, 2022 WL 838122, at *10-11 (N.D. Cal. Mar. 20, 2022). Because the PREP Act does not apply, I need not reach defendants' argument that I lack jurisdiction to reach claims involving "[t]he sole exception to the PREP Act's broad immunity."

### III. QUALIFIED IMMUNITY

"Qualified immunity protects government officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hernandez v. City of San Jose*,

---

[12] The Declaration further provides:

> [T]he Act precludes a liability claim relating to the management and operation of a countermeasure distribution program or site, such as a slip-and-fall injury or vehicle collision by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, lax security or chaotic crowd control. However, a liability claim alleging an injury occurring at the site that was not directly related to the countermeasure activities is not covered, such as a slip and fall with no direct connection to the countermeasure's administration or use. In each case, whether immunity is applicable will depend on the particular facts and circumstances.

Declaration, 85 Fed. Reg. at 15200.

897 F.3d 1125, 1132 (9th Cir. 2018) (quotation and citation omitted). "To determine whether an officer is entitled to qualified immunity, [courts] ask, in the order [they] choose, (1) whether the alleged misconduct violated a right and (2) whether the right was clearly established at the time of the alleged misconduct." *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).

If there was a violation, the "salient question" is whether the law at the time gave the defendants "fair warning" that their conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Courts should not define clearly established law "at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). On the other hand, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); accord *White v. Pauly*, 137 S. Ct. 548, 551 (2017).

Defendants' argument that they have qualified immunity from plaintiffs' lawsuit fails at this stage of the litigation. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Plaintiff have plausibly alleged that the conduct described in the complaint violated their constitutional rights.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133,

12

1136 (9th Cir. 1997) (en banc)).

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (cleaned up); *see Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000) (supervisors can be liable for "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others").

Plaintiffs have plausibly alleged that each of the defendants named in their various complaints participated, as supervisor or otherwise, in one or more of the decisions to transfer prisoners, regarding the process for transferring prisoners, and regarding the housing of prisoners after the transfer, in a manner that exposed plaintiffs to heightened risk of contracting COVID-19. These alleged actions are sufficient to constitute unconstitutional conduct. *See Helling v. McKinney*, 509 U.S. 25, 33, 34 (1993) ("the exposure of inmates to a serious, communicable disease," including by the "mingling of inmates with serious contagious diseases with other prison inmates," violates the Eighth Amendment).

The plausibility of plaintiffs' claims that defendants were deliberately indifferent to the risk of exposure associated with the transfer, the transfer protocol, and the containment strategy or lack thereof upon receiving the prisoners at San Quentin, is bolstered by the allegations contained in the incorporated OIG report. The report noted:

> Our review found that the department's efforts to prepare for and execute the transfers of 67 medically vulnerable incarcerated persons to Corcoran and 122 to San Quentin were deeply flawed and risked the health and lives of the medically vulnerable incarcerated persons whom the department was attempting to protect . . . . In an effort to remove the medically vulnerable incarcerated persons from the prison's outbreak, CCHCS and departmental executives locked themselves into a tight deadline for beginning the transfers by the end of May 2020 . . . . Faced

13

> with this self-imposed deadline, CCHCS executives and management at the department's headquarters pressured staff at the California Institution for Men to take whatever action was necessary to execute the transfers within this time frame.
>
> The deadline and resulting pressure from executives to meet the deadline created apprehension among prison staff, causing some to question the safety of the transfers. Numerous email messages the OIG reviewed illustrate these concerns.
> . . .
> The insistence on beginning the transfers by the end of May 2020 resulted in the California Institution for Men transferring medically vulnerable incarcerated persons despite knowing that weeks had passed since many of them had been tested for COVID-19 . . . .
>
> The decision to transfer the medically vulnerable incarcerated persons despite such outdated test results was not simply an oversight; instead, it was a conscious decision made by prison and CCHCS executives.

Dkt. No. 32-5 at 17-18.

The report also found that SQSP had inadequate infrastructure for controlling the spread of the virus: "Given the clearly antiquated design of San Quentin's housing units as well as the prisons' history [of influenza outbreaks], the decision by CCHCS and the department to transfer 122 medically vulnerable incarcerated persons to San Quentin is especially puzzling." *Id.* at 47. It also found that "San Quentin took inadequate precautions to limit the spread of COVID-19 throughout the prison" by failing to limit the movement of staff and enforce masking. *Id.* at 49-49.

Further, the law at the time of the events of which plaintiffs complain gave defendants fair warning that the alleged conduct, exposing plaintiffs to greater risk of contracting a communicable disease, was unconstitutional. *See Helling*, 509 U.S. at 35 (exposure to inhalants that pose an "unreasonable risk of serious damage to [a prisoner's] future health" was an Eighth Amendment violation when done with deliberate indifference); *Hutto v. Finney*, 437 U.S. 678, 682 (1978) ("jumbl[ing] together" of mattresses used by prisoners with infectious diseases with other prisoners contributed to Eighth Amendment violating punitive isolation conditions); *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014) ("Since *Helling* and *Farmer*, we have repeatedly recognized that prison officials are constitutionally prohibited from being deliberately indifferent to

14

policies and practices that expose inmates to a substantial risk of serious harm"); *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007) (prisoner stated Eighth Amendment claim based on failure to screen for infectious diseases or isolate those with infections).

Defendants' claims of qualified immunity rely on too narrow a definition of the clearly established right at issue. Though a court must not define a right at a high level of generality, *see Kisela*, 138 S. Ct. at 1152, an official's "legal duty need not be litigated and then established disease by disease or injury by injury," *Est. of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017); *Maney v. Brown*, 2020 WL 7364977, at *6 (D. Or. Dec. 15, 2020) (denying qualified immunity to prison officials because inmates had "a clearly established constitutional right to protection from a heightened exposure to COVID-19, despite the novelty of the virus"). At the motion to dismiss stage, I cannot agree that defendants were not on notice that their conduct might violate the Constitution.

Nor is qualified immunity appropriate at this stage based on defendants' claims that CDCR followed the Receiver's orders. That the Receiver ordered the transfer does not on its own shield defendants from liability. What the Receiver directed defendants to do entails a fact-specific inquiry; I cannot determine at this time whether defendants are entitled to immunity on that basis.[13]

*Hines v. Youseff*, 914 F.3d 1218 (9th Cir. 2019), does not compel a different result. There, the Ninth Circuit upheld a finding of qualified immunity for CDCR officials at the summary judgment stage from claims of exposing plaintiffs to Valley Fever. The court found it "especially significant that state officials could have reasonably believed that they were not violating the inmates' Eighth Amendment rights because the officials reported to the federal Receiver." *Id.* at 1231. Here, in contrast, I lack adequate information for now

---

[13] Disputed facts necessary for determining qualified immunity preclude such a finding at a motion to dismiss or motion for summary judgment stage. *See, e.g., Est. of Adams*, 133 F.3d 926 (9th Cir. 1998); *Atencio v. Arpaio*, 674 F. App'x 623, 625 (9th Cir. 2016). *See also Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) ("'whether a constitutional right was violated ... is a question of fact' for the jury, while 'whether the right was clearly established ... is a question of law' for the judge") (quoting *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).

15

to determine whether state officials made decisions independent from the instructions of the Receiver that failed to meet a constitutional level of care.

The *Hines* court noted that millions of people choose to live in the Central Valley despite the risk of Valley Fever exposure and that "there is no evidence in the record that 'society's attitude had evolved to the point that involuntary exposure' to either the heightened risk inside prison or the lower risk outside prison 'violated current standards of decency'." *Id.* at 1232. Here, in contrast, the "standards of decency" regarding COVID-19 exposure in May 2020 is a matter requiring further factual development. At first glance, the seriousness of COVID-19 and the national and global response to the pandemic by April and May of 2020 suggest a very different picture from what was in front of the *Hines* court.

Neither does *Rico v. Ducart*, 980 F.3d 1292, 1299 (9th Cir. 2020), also cited by defendants, confer immunity on defendants. In *Rico*, the Ninth Circuit found that correctional officers had qualified immunity from a claim that they violated prisoners' constitutional rights by making excessive noise and depriving them of sleep while carrying out welfare checks ordered as part of the ongoing *Coleman v. Newsom* class action. The existence of the court order directing the checks was not dispositive; rather, the court looked to precedent regarding whether it was clearly established that excessive noise was unconstitutional. Here, as previously discussed, the precedent does clearly establish that exposure to an infectious disease is unconstitutional.

My finding that defendants are not presently entitled to qualified immunity is consistent with decisions by other district courts within the Ninth Circuit. *See, e.g., Hampton*, 2022 WL 838122 at *8 (disputed facts preclude qualified immunity for claims arising from the May 2020 transfer of prisoners from CIM to SQSP); *Maney*, 2020 WL 7364977; *Jones v. Sherman*, No. 121CV01093DADEPGPC, 2022 WL 783452, at *10 (E.D. Cal. Mar. 11, 2022) ("the law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and the Court finds that this clearly established

16

right extends to protection from COVID-19"); *Jones v. Pollard*, No. 21-CV-162-MMA (RBM), 2022 WL 706926, at *9-10 (S.D. Cal. Mar. 9, 2022) (denying qualified immunity at the motion to dismiss stage and noting "[t]he issue of whether Defendant's decision was made under the supervision of the federal Receiver, and if so, whether that supervision impacts the reasonableness of the belief that the conduct was lawful thus triggering qualified immunity should be more appropriately addressed at a later stage").[14]

## CONCLUSION

For the foregoing reasons, the claims of PREP Act immunity and qualified immunity at the pleadings stage are denied, and the motions to dismiss are DENIED on those bases, in the following Represented Cases:

- 20-cv-09415-BLF *Cooper v. Allison et al.*
- 21-cv-00708-EJD *Quale v. Allison et al.*
- 21-cv-01832-JD *Ruiz et al v. State of California et al.*
- 21-cv-01963-HSG *Legg et al v. Calif. Department of Corrections and Rehabilitation et al.*
- 21-cv-04095-JD *Love v. State of California et al.*
- 21-cv-04604-JD *Diaz et al v. State of California et al.*
- 21-cv-06960-WHO *Thorpe v. Diaz et al.*
- 21-cv-08154-JD *Warner et al v. State of California et al.*

This Order terminates Docket Nos. 9, 13, 15, and 17-21 in 22-mc-80066, and

---

[14] The out-of-circuit authority defendants cite simply holds that a correctional institution's failure to achieve social distancing and failure to prevent the spread of COVID does not amount to recklessness where the institution took "numerous measures to combat the virus." *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020). *See also Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (Bureau of Prisons officials generally "responded reasonably to the risk posed by COVID-19" even though the virus spread). Here, the allegation is not that defendants simply failed to prevent the spread of the virus or achieve measures not possible in a correctional setting; it is that they actively and knowingly made specific affirmative decisions that created greater risk that plaintiffs would contract COVID.

terminates as moot the motions to dismissed filed in the underlying dockets. *See* Case Nos. 20-cv-09415-BLF (Dkt. No. 37), 21-cv-00708-EJD (Dkt. No. 18), 21-cv-01832-JD (Dkt. No. 31), 21-cv-01963-HSG (Dkt. No. 38), 21-cv-04095-JD (Dkt. Nos. 24, 39), 21-cv-04604-JD (Dkt. No. 49), 21-cv-06960-WHO (Dkt. No. 23). Any motions for reconsideration or for interlocutory appeal of the issues decided herein for the Represented Cases should be directed to the undersigned. Otherwise, the STAY on substantive proceedings put in place for the Represented Cases covered by this Order is lifted, I have completed my work with respect to the Assigned Issues in the Represented Cases, and litigation may proceed with the originally assigned judge.

This Order does not preclude any defendant in the underlying cases from filing a renewed motion to dismiss raising arguments not covered by the Assigned Issues identified in the Order of Limited Assignment.

**IT IS SO ORDERED.**

Dated: July 15, 2022



William H. Orrick
United States District Judge